## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| REBECCA WASSERMAN, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. |
| | § | Jury |
| | § | |
| TRI-W GLOBAL, INC., and | § | |
| LONGVIEW STAFFING | § | |
| PROFESSIONALS LLC, d/b/a STONE | § | |
| BRIDGE PERSONNEL SERVICES, | § | |
| *Defendants*. | § | |

## COMPLAINT

Plaintiff Rebecca Wasserman brings this action against Defendant Tri-W Global, Inc. and Defendant Longview Staffing Professionals LLC, d/b/a Stone Bridge Personnel Services. Wasserman shows the following in support.

### Nature of the Case

1.      This is an employment discrimination/sex harassment case. The main malefactor is a supervisor. This case includes a tangible job detriment (discharge).

2.      Defendants' conduct referenced in paragraph 1 *supra* violates Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e-2(a)(1) ("Unlawful employment practices"). Wasserman seeks all relief available to her thereunder.

### Parties

3.      Plaintiff Rebecca Wasserman is an individual. She resides in Longview, Texas.

A.      Wasserman was an "employee" of Tri-W Global, Inc., as that term is defined in 42 U.S.C. §2000e(f), at all times from her date of hire there through the last day of her employment there.

**Complaint**                                                                                              **Page 1**

B.      Wasserman was an "employee" of Longview Staffing Professionals LLC, d/b/a Stone Bridge Personnel Services, as that term is defined in 42 U.S.C. §2000e(f), at all times from her date of hire there through the last day of her employment there.

4.      Defendant Tri-W Global, Inc. was an "employer" of Wasserman, as that term is defined in 42 U.S.C. § 2000e(b), from the day when it put Wasserman on its payroll through the last day of Wasserman's employment there.

A      Tri-W Global, Inc. had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2018.

B.      Tri-W Global, Inc. had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2017.

5.      Defendant Longview Staffing Professionals LLC, d/b/a Stone Bridge Personnel Services, was an "employer" of Wasserman, as that term is defined in 42 U.S.C. § 2000e(b), from the day when it put Wasserman on its payroll through the last day of Wasserman's employment there.

A      Longview Staffing Professionals LLC, d/b/a Stone Bridge Personnel Services, had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2018.

B.      Longview Staffing Professionals LLC, d/b/a Stone Bridge Personnel Services, had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2017.

6.      Defendant Tri-W Global, Inc. ("Tri-W") is a corporation. Tri-W was formed in Delaware, and it is currently in good standing.

A.      Tri-W may be served with process by serving its **registered agent, CT**

**Complaint**                                                                                         **Page 2**

**Corporation System,** at the following location – **1999 Bryan Street, Suite 900, Dallas, Texas 75201,** or wherever else it may be found.

7.      Defendant Longview Staffing Professionals LLC, d/b/a Stone Bridge Personnel Services ("Longview Staffing"), is a corporation. It was formed in Texas, and it is currently in good standing.

A.      Longview Staffing may be served with process by serving its registered agent, Jacqueline Polk, at the following location – **303 W. Loop 281, Suite  110 #313, Longview, Texas 75605,** or wherever else she may be found.

8.      Tri-W and Longview Staffing constitute "joint employers" for purposes of the "hybrid economic realities/common law control test."

**Jurisdiction**

9.      This Court has original, subject matter jurisdiction over this action because Wasserman's Title VII discrimination claim presents a federal question. *See* 28 U.S.C. §1331; *see also* 28 U.S.C. §1343(a)(4) ("civil rights").

10.     The Court has personal jurisdiction, both specific and general, over Tri-W because Tri-W conducts business in Texas, Wasserman's claim for relief arose in Texas, and Tri-W is amenable to service by this Court.

11.     The Court has personal jurisdiction, both specific and general, over Longview Staffing because Longview Staffing conducts business in Texas, Wasserman's claim for relief arose in Texas, and Longview Staffing is amenable to service by this Court.

**Venue**

12.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Wasserman's claim for relief occurred here. *See* 28 U.S.C. §1391(b)(2).

**Complaint**                                                                                                          **Page 3**

**Material Facts**

13.    Wasserman's gender is female.

14.    After hiring Wasserman,  Longview Staffing sent Wasserman to work for one of its clients/customers, Tri-W, beginning on April 25, 2018.

15.    On April 25, 2018, Wasserman began working on a lathe machine at a facility operated by Tri-W at the following location – 1032 East Commerce Street, Gladewater, Gregg County, Texas 75647.

16.    The highest-ranking individual at the facility referenced in paragraph 15 *supra*  was a certain Mr. Tucker Mills.

17.    Mills had immediate (or successively higher) authority over Wasserman.

18.    Tri-W empowered Mills to take tangible employment action against Wasserman.

19.    On May 7, 2018, at or around ten o'clock in the morning, Mills tried to take Wasserman to "the lake" for "lunch."

20.    On May 7, 2018, and while the two were at Tri-W, Mills tried to take Wasserman to "the lake" for "lunch" consisting, at least in part, of vodka.

  A.    Mills's invitation for Wasserman to go to "the lake" with him and some vodka for "lunch" was unrelated to any of Wasserman's job duties at Tri-W.

21.    On May 8, 2018, and while the two were at Tri-W during business hours, Wasserman told Mills that she found his conduct towards her on the previous day to be unwelcome.

22.    On May 15, 2018, and while the two were at Tri-W during business hours, Mills told Wasserman he "heard" that if Wasserman was not married, she would "jump his bones."

  A.    Mills's statement referenced in this paragraph was unrelated to any of Wasserman's job duties at Tri-W.

**Complaint**                                                                                       **Page 4**

B.    Mills's statement referenced in this paragraph was false and offensive.

C.    A reasonable person would find Mills's statement referenced in this paragraph to be unwelcome.

D.    Wasserman found Mills's statement referenced in this paragraph to be unwelcome.

23.    On May 17, 2018, and while the two were at Tri-W during business hours, Mills asked Wasserman if Wasserman had ever had an extra-marital affair.

A.    Mills's question was unrelated to any of Wasserman's job duties at Tri-W.

B.    A reasonable person would find Mills's question to be unwelcome.

C.    Wasserman found Mills's question to be unwelcome.

24.    On May 22, 2018, and while the two were at Tri-W during business hours, Mills made the same kind of "bones" comment he had previously made to Wasserman on May 15, 2018, as set forth in paragraph 22 *supra*.

A.    Mills's comment was unrelated to any of Wasserman's job duties at Tri-W.

B.    Mills's comment was false and offensive.

C.    A reasonable person would find Mills's comment to be unwelcome.

D.    Wasserman found Mills's comment to be unwelcome.

25.    On May 24, 2018, and while the two were at Tri-W during business hours, Mills told Wasserman how he liked sex that was "rough" and "passionate."

A.    Mills's statement was unrelated to any of Wasserman's job duties at Tri-W.

B.    A reasonable person would find Mills's statement to be unwelcome.

C.    Wasserman found Mills's statement to be unwelcome.

26.    On May 24, 2018, and while the two were at Tri-W during business hours, Mills

**Complaint**                                                                                                          **Page 5**

told Wasserman that he liked to "rape" women.

   A. Mills's statement was unrelated to any of Wasserman's job duties at Tri-W.

   B. A reasonable person would find Mills's statement to be unwelcome.

   C. Wasserman found Mills's statement to be unwelcome.

27. On May 29, 2018, and while the two were at Tri-W during business hours, Mills went to the machine where Wasserman was working, and Mills bumped into Wasserman's breasts.

   A. Mills bumping into Wasserman's breasts was unrelated to any of Wasserman's job duties at Tri-W.

   B. A reasonable person would find Mills bumping into Wasserman's breasts to be unwelcome.

   C. Wasserman found Mills bumping into her breasts to be unwelcome.

28. Mills never apologized to Wasserman for bumping into her breasts on May 29, 2018 as set forth in paragraph 27 *supra.*

29. After Mills bumped into Wasserman's breasts on May 29, 2018, as set forth in paragraph 27 *supra,* Mills told Wasserman that Wasserman's breasts "felt good" to him.

   A. Mills's statement that Wasserman's breasts "felt good" to him was unrelated to any of Wasserman's job duties at Tri-W.

   B. A reasonable person would find Mills's statement that Wasserman's breasts "felt good" to him to be unwelcome.

   C. Wasserman found Mills's statement that her breasts "felt good" to him was unwelcome.

30. On another occasion, and while the two were at Tri-W during business hours, Mills told Wasserman that he "*want[ed] to get behind*" Wasserman.

**Complaint**             **Page 6**

A.    Mills's statement about wanting to get behind Wasserman was unrelated to any of Wasserman's job duties at Tri-W.

B.    A reasonable person would find Mills's statement about wanting to get behind Wasserman to be unwelcome.

C.    Wasserman found Mills's statement about wanting to get behind her to be unwelcome.

31.    On May 31, 2018, Tri-W discharged Wasserman.

32.    On May 31, 2018, Tri-W, by and through Mills's assistant, "Richard," informed Wasserman that Tri-W was discharging her, effective immediately.

33.    On May 31, 2018, Tri-W., by and through Mills's assistant, "Richard," informed Wasserman that Tri-W was discharging her, effective immediately. Richard also told Wasserman that Tri-W made its discharge decision because it was "slowing down" to forty hours per week.

34.    Following her meeting with Richard, referenced in paragraphs 32 and 33 *supra,* Wasserman advised Longview Staffing of her discharge.

35.    Following her meeting with Richard, referenced in paragraphs 32 and 33 *supra,* Wasserman advised Longview Staffing of her discharge, including that Mills fired her because he "could not get into my pants."

36.    Following her meeting with Richard, referenced in paragraphs 32 and 33 *supra,* Wasserman advised Longview Staffing of her discharge. Wasserman advised Ms. Crea Davis, Longview Staffing's Staff Director, that she not send "another girl" to Tri-W.

A.    Davis did not ask why.

B.    Davis only responded by saying, "Ok."

37.    Longview Staffing never investigated any of Mills's conduct towards Wasserman.

38.     Longview Staffing never placed Wasserman with any of its other clients/ customers.

39.     Longview Staffing never offered to place Wasserman with any of her other clients/ customers.

40.     Longview Staffing discharged Wasserman.

41.     On June 25, 2018, Wasserman signed two separate charges of discrimination – one that names as a respondent Tri-W Global, Inc., and another that names as a respondent Stone Bridge Personnel Services -- with the U.S. Equal Employment Opportunity Commission ("EEOC").

42.     EEOC received the two charges referenced in paragraph 41 *supra* on July 3, 2018.

43.     On January 8, 2019, *i.e.,* after more than 180 days following EEOC's receipt of Wasserman's two charges had passed, Wasserman, by and through her attorney, asked EEOC to issue a "right to sue" letter for each charge of discrimination referenced in paragraph 41 *supra.*

44.     On February 7, 2019, EEOC's District Director responded to the request referenced in paragraph 43 *supra* by signing two documents, each titled *Notice of Right to Sue (Issued On Request).*

45.     Wasserman has filed this action fewer than ninety days from February 7, 2019.

46.     As a result of defendants' conduct, including the foregoing, Wasserman has sustained financial losses, and Wasserman is continuing to sustain financial losses.

47.     As a result of defendants' conduct, including the foregoing, Wasserman has suffered mental anguish, and Wasserman is continuing to suffer mental anguish.

### Count One – Discrimination in Violation of Section 703(a)(1) of Title VII
### Sex Harassment by Supervisor; Tangible Job Detriment Included

48.     Wasserman re-alleges and incorporates by reference all allegations set forth in paragraphs 13 through 47.

49.     Wasserman brings this claim against both defendants.

50.     Title VII provides: "*It shall be an unlawful employment practice for any employer ... (1) ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...*"

51.     The prohibition set forth in paragraph 50 *supra* includes sexual harassment. Quoting the Supreme Court, Wasserman should not be forced to "***run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living***[.]" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Yet, that is precisely what both Tri-W and Longview Staffing made Wasserman do.

52.     Defendants violated Title VII as follows. *First*, Wasserman was a member of a protected class (women). *Second*, Wasserman was subjected to unwelcome sexual harassment by Mills. *Third*, Mills's harassment of Wasserman was based upon sex or gender. *Fourth*, Mills's harassment of Wasserman was sufficiently severe or pervasive to affect a term, condition or privilege of Wasserman's employment.

53.     Wasserman is not required to prove any "knew or should have known" element because the harassment inflicted on Wasserman came from her supervisor, *viz.,* Mills, and because Wasserman eventually/ultimately suffered a tangible job detriment (discharge).

54.     Wasserman has satisfied the following conditions precedent to the filing of Count One – *first*, Wasserman timely filed the two charges of discrimination with EEOC; *second*, EEOC

issue to Wasserman two "right to sue" letters; and *third,* Wasserman, by and through her attorney, has filed this lawsuit within 90 days of Wasserman's receipt of EEOC's two "right to sue" letters.

55.     Wasserman seeks all relief available to her under Section 703(a)(1) of Title VII. This includes but is not limited to the following: (i) all wages and employment benefits, starting on the effective date of Wasserman's discharge, and ending on the date when a jury renders a verdict ("back pay"); (ii) reinstatement, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Wasserman will be made whole ("front pay"); (iii) compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses; (iv) punitive damages, given the fact that defendants, or either of them, engaged in discriminatory practices with malice or with reckless indifference to Wasserman's federally-protected rights; (v) all permitted equitable relief; (vi) all interest allowed by law, *e.g.,* pre-judgment and post-judgment; (vii) a reasonable attorney's fee to the undersigned counsel as part of the costs; (viii) reimbursement of expert fees as part of the undersigned counsel's attorney's fee; and, (ix) all other costs allowed by law.

### Jury Demand

56.     Pursuant to FED. R. CIV. P. 38(a), Wasserman demands a jury on all issues so triable.

### Request for Relief

WHEREFORE, Plaintiff Rebecca Wasserman asks that Defendant Tri-W Global, Inc. ("Tri-W") and Defendant Longview Staffing Professionals LLC, d/b/a Stone Bridge Personnel Services ("Longview Staffing") appear and answer, and that on trial of this action Wasserman have final judgment against Tri-W and Longview Staffing, jointly and severally, for the relief set forth

in this pleading.

Dated: March 20, 2019

Respectfully submitted,

/s/

By: _____

**Wade A. Forsman**
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX 75483-0918
903.689.4144 Telephone-East Texas
972.499.4004 Telephone–Dallas/Fort Worth
903.689.7001 Facsimile
**wade@forsmanlaw.com**

**Attorney for Plaintiff Rebecca Wasserman**